1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   BENNIE DIXON,                )   Civil No. 06-2027-JAH(LSP)
                                   )
12                Plaintiff,       )   SECOND
                                   )   REPORT AND RECOMMENDATION
13   v.                           )   GRANTING DEFENDANTS' MOTION
                                   )   FOR SUMMARY JUDGMENT
14   CITY OF SAN DIEGO, et al.,   )   (DOC. # 59)
                                   )
15                Defendants.      )
     _____

16

17        On December 12, 2006, Plaintiff Bennie Dixon (hereafter

18   "Plaintiff") filed a First Amended Complaint pursuant to 42 U.S.C.

19   §1983 alleging that his civil rights were violated. Plaintiff's

20   First Amended Complaint also contains causes of action for battery,

21   false arrest, negligence and emotional distress.  On December 8,

22   2008, Defendants Mark Taylor (hereafter "Taylor"), Patrick Sullivan

23   (hereafter "Sullivan"), and Brandie Sorbie (hereafter "Sorbie")

24   (hereafter collectively "Defendants") filed a Motion for Summary

25   Judgment (hereafter "Motion").  Plaintiff did not file an Opposition

26   to the Motion.  On January 16, 2009, the Court issued a Report and

27   Recommendation Granting Defendants' Motion.  Unbeknownst to the

28   undersigned, on January 16, 2009, Plaintiff attempted to file an

1   Opposition to the Motion.   On January 22, 2009, the District Judge

2   assigned to this case allowed Plaintiff to file a Motion for Denied

3   Access To The Courts, which presents arguments and evidence in

4   opposition to the Motion (hereafter "Opposition").   On February 2,

5   2009, the District Judge assigned to this case denied Plaintiff's

6   Motion for Denied Access To The Courts and declined to adopt the

7   January 16, 2009 Report and Recommendation so that the undersigned

8   could consider the arguments and evidence in opposition to the

9   Motion, as presented by Plaintiff.   On February 11, 2009, Defendants

10  filed a Reply to Plaintiff's Opposition.

11        The Court, having reviewed the First Amended Complaint, the

12  Motion, Plaintiff's Opposition, Defendants' Reply and the exhibits

13  attached thereto and GOOD CAUSE APPEARING, HEREBY RECOMMENDS that

14  the Motion for Summary Judgment be GRANTED.

15                                    I

16                        STATEMENT OF FACTS

17        In the early morning of March 9, 2005, uniformed San Diego

18  Police Officer Sullivan received a radio call to investigate a

19  battery with a deadly weapon at Elizabeth Freese Elementary School

20  located at 8140 Greenlawn Drive. (Declaration of Patrick Sullivan at

21  2, ll. 3-7)(hereafter "Sullivan Dec.")

22        A school custodian, Manuel Hernandez (hereafter "Hernandez"),

23  had been attacked earlier that morning by a man with a three-foot

24  stick, causing bruising to Hernandez' back.   As the suspect was

25  walking out of the school, he also threatened with the stick Julia

26  Pacheco (hereafter "Pacheco"), another school employee.   The suspect

27  was described as a black male with a bald head, clean shaven and

28  wearing a black jumpsuit with a white stripe running down the sides.

1  (Sullivan Dec. at 2, ll. 3-7, Declaration of Brandie Sorbie at 2,

2  ll. 3-6, hereafter "Sorbie Dec.")

3       Plaintiff alleges that prior going to the school, he was

4  being chased by a group of Hispanic gang members.  He alleges that

5  he "ran lost" into the school's parking lot with a small piece of

6  lumber in his hand. (Opposition at 1a) Plaintiff alleges that he

7  feared for his life when he encountered Hernandez, who spit on him

8  and exposed a box cutter with which he believed Hernandez would hurt

9  him.  Thereafter, he asserts that he hit Hernandez in self-defense.

10  (Opposition at 1a-2)

11       Soon thereafter, a black male fitting the suspect's descrip-

12  tion was spotted walking on Imperial Avenue, a short distance from

13  Freese Elementary School.  The male, later identified as Plaintiff,

14  was walking in the direction of a park carrying a stick and striking

15  at weeds with the stick. [Sullivan Dec. at 2, ll. 9-14, Report of

16  Johnson (hereafter "Johnson Rpt.")]

17       Uniformed San Diego Police Officer Michelle Johnson (hereaf-

18  ter "Johnson") approached Plaintiff first as Plaintiff was sitting

19  on the ground barefoot, leaning against a building with his shoes

20  and socks lying on the ground next to him.  A large stick was also

21  lying next to Plaintiff.  Johnson commanded Plaintiff to put his

22  hands in the air in order to see if he had anything in them, but

23  Plaintiff said "What for?" and then tried to reach for the stick.

24  (Sorbie Dec. at 2, ll. 13-18, Johnson Rpt., attached to the

25  Declaration of Sergeant Paul Salas[1] [Plaintiff's First Amended

26  Complaint at 4, 5(ii)-(iv)]

27  _____

28  [1]    Johnson is no longer a San Diego Police Officer and was not served
       with this lawsuit.  She has not been located to provide a
       declaration.  Sergeant Paul Salas approved Johnson's Rpt.

3                                          06CV2027

1    Johnson kicked the stick out of Plaintiff's reach and then
2    grabbed onto his arm and ordered him to stand up.  Plaintiff stood
3    up quickly with his feet braced apart and his hands clenched into
4    fists. He swung his clenched left fist at Johnson's face.  Johnson
5    dodged Plaintiff's fist and took out her expandable baton, which she
6    then used to strike Plaintiff on his arms. (Johnson Rpt., Sorbie
7    Dec. at 2, ll. 17-18)

8    Uniformed Officer Sorbie arrived just before the struggle
9    between Plaintiff and Johnson ensued.  Sorbie saw Plaintiff stand up
10   and attempt to strike Johnson with his clenched fist.  Sorbie joined
11   in the effort to take Plaintiff into custody.  Plaintiff continued
12   to swing his arms at Johnson as Sorbie assisted in gaining control
13   of him. (Sorbie Dec. at 2, ll. 13-21, Johnson Rpt.)

14   Subsequently, Uniformed Officer Taylor arrived and tried to
15   take Plaintiff into custody as Plaintiff continued to resist, kick
16   and flail. [Declaration of Mark Taylor at 2, ll. 13-20, (hereafter
17   "Taylor Dec."), Sorbie Dec. at 2, ll. 21-26, Sullivan Dec. at 2, ll.
18   11-14]

19   Sullivan arrived at the scene and the four Officers were
20   finally able to handcuff Plaintiff after striking several blows of
21   their batons to Plaintiff's thighs. (Taylor Dec. at 2, ll. 16-20,
22   Sullivan Dec. at 2, ll. 16-20, Sorbie Dec. at 2, ll. 24-26, Johnson
23   Rpt.)

24   After Plaintiff calmed down, he identified himself.  At a
25   curbside line-up, Pacheco identified Plaintiff as the man who had
26   threatened her with a stick earlier that day. She positively
27   identified Plaintiff's stick as the weapon Plaintiff had used to
28   threaten her. (Sorbie Dec. at 2, ll. 1-6, Sullivan Dec. at 2, ll.

1   21-24, Johnson Rpt.)

2        After Plaintiff was taken into custody, he began making

3   strange statements about snakes around his ankles.  Also, he behaved

4   oddly by making sudden and jerky movements.  Johnson transported

5   Plaintiff to County Mental Health for a psychiatric evaluation and

6   learned that Plaintiff had recently been released from a 24 or 26

7   day incarceration at the County Jail. (Johnson Rpt., Sorbie Dec. at

8   3, ll. 1-6, Sullivan Dec. at 2, ll. 21-24)

9        Plaintiff's First Amended Complaint, viewed as an affidavit

10  in support of an opposition to the motion (see discussion below) and

11  Opposition do not contain facts that materially differ from

12  Defendants' account of Plaintiff's arrest, other than he alleges

13  (albeit without the required factual specificity) that Defendants'

14  actions amounted to unprovoked excessive force against him, that

15  Sullivan delivered blows to him that are not mentioned above, that

16  Defendants were not competently trained and lacked experience, that

17  Defendants did not provide him with a "Force Effectiveness" form of

18  Johnson, and that the San Diego Police Department is, in some way,

19  corrupt.  Plaintiff does not state facts showing that he resisted

20  arrest.  Nor does he state facts showing that Defendants' acts were

21  unprovoked nor unjustified under the circumstances.

22        On September 21, 2007, the Court of Appeal, in affirming

23  Plaintiff's convictions arising from the incident described above,

24  essentially found the same facts as does this Court. (Opposition at

25  Appendix A)

26

27

28

1

II

2

STANDARD FOR SUMMARY JUDGMENT

3       Fed.R.Civ.P. 56(c) authorizes the granting of summary

4   judgment "if the pleadings, depositions, answers to interrogatories,

5   and admissions on file, together with the affidavits, if any, show

6   that there is no genuine issue as to any material fact and that the

7   moving party is entitled to judgment as a matter of law."   The

8   standard for granting a motion for summary judgment is essentially

9   the same as for the granting of a directed verdict.   Judgment must

10  be entered "if, under the governing law, there can be but one

11  reasonable conclusion as to the verdict."   Anderson v. Liberty

12  Lobby, Inc., 477 U.S. 242, 250-51 (1986).   However, "[i]f reasonable

13  minds could differ," judgment should not be entered in favor of the

14  moving party.   Id.; see also Blankenhorn v. City of Orange, 485 F.3d

15  463, 470 (9th Cir. 2007) ("If a rational trier of fact might resolve

16  the issue in favor of the nonmoving party, summary judgment must be

17  denied.") (alteration omitted).

18       The parties bear the same substantive burden of proof as

19  would apply at a trial on the merits, including plaintiff's burden

20  to establish any element essential to his case.   Liberty Lobby, 477

21  U.S. at 252; Celotex v. Catrett, 477 U.S. 317, 322 (1986); Taylor v.

22  List, 880 F.2d 1040, 1045 (9th Cir. 1989).

23       The moving party bears the initial burden of identifying the

24  elements of the claim in the pleadings, or other evidence, which the

25  moving party "believes demonstrates the absence of a genuine issue

26  of material fact."   Celotex, 477 U.S. at 323; Adickes v. S. H. Kress

27  & Co., 398 U.S. 144 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d

28  870, 883 (9th Cir. 1982).   "A material issue of fact is one that

1   affects the outcome of the litigation and requires a trial to
2   resolve the parties' differing versions of the truth." S.E.C. v.
3   Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than
4   a "metaphysical doubt" is required to establish a genuine issue of
5   material fact.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
6   Corp., 475 U.S. 574, 586 (1986).

7       The burden then shifts to the nonmoving party to establish,
8   beyond the pleadings, that there is a genuine issue for trial.
9   Celotex, 477 U.S. at 324.  To successfully rebut a properly
10  supported motion for summary judgment, the nonmoving party "must
11  point to some facts in the record that demonstrate a genuine issue
12  of material fact and, with all reasonable inferences made in the
13  plaintiff[]'s favor, could convince a reasonable jury to find for
14  the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d
15  736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; Celotex, 477 U.S.
16  at 323; Anderson, 477 U.S. at 249; see also Galen v. County of Los
17  Angeles, 477 F.3d 652, 658 (9th Cir. 2007) (noting that the
18  non-moving party may defeat summary judgment if she makes a showing
19  sufficient to establish a question of material fact requiring a
20  trial to resolve)

21      Here, Plaintiff has filed a verified First Amended Complaint
22  and an Opposition to the Motion.  A verified complaint or motion may
23  be used as an opposing affidavit under FED.R.CIV.P. 56.  Schroeder
24  v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995 (complaint); McElyea v.
25  Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (complaint); Johnson
26  v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion).
27  Plaintiff's First Amended Complaint is based on personal knowledge
28  and sets forth some facts that may be admissible in evidence.

1   Fed.R.Civ.P. 56(e); <u>Schroeder</u>, 55 F.3d at 460. Thus, the Court may

2   consider it as an opposing affidavit under Fed.R.Civ.P. 56.

3        However, "'a verified complaint may serve as an affidavit for

4   purposes of summary judgment [only] *if* [1] it is based on personal

5   knowledge and if [2] it sets forth the requisite facts with

6   specificity.'" <u>California Pro-Life Council v. Randolph</u>, 507 F.3d

7   1172 (9th Cir. 2007) [quoting <u>Moran v. Selig</u>, 447 F.3d 748, 760 n.16

8   (9th Cir. 2006) (citation omitted)] (emphasis added).

9   III

10  <u>DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT</u>

11  1. <u>Qualified Immunity</u>

12       Defendants contend that summary judgment is proper because

13  they are entitled to Qualified Immunity in that they did not violate

14  Plaintiff's constitutional rights. Plaintiff does not oppose

15  Defendants' contention.

16       Qualified immunity shields government officials performing

17  discretionary functions from liability for civil damages unless

18  their conduct violates clearly established statutory or constitu-

19  tional rights of which a reasonable person would have known.

20  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)

21       "In a suit against an officer for an alleged violation of a

22  constitutional right, the requisites of a qualified immunity defense

23  must be considered in proper sequence. Where the defendant seeks

24  qualified immunity, a ruling on that issue should be made early in

25  the proceedings so that the costs and expenses of trial are avoided

26  where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194

27  (2001).

28       "Qualified immunity is 'an entitlement not to stand trial or

1    face the other burdens of litigation.'" <u>Saucier</u>, 121 S.Ct. at 2156

2    [quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)]   The

3    privilege is "an immunity from suit rather than a mere defense to

4    liability;  and like an absolute immunity, it is effectively lost if

5    a case is erroneously permitted to go to trial." <u>Mitchell</u>, 472 U.S.

6    at 526.   Thus, the Supreme Court has "repeatedly... stressed the

7    importance of resolving immunity questions at the earliest possible

8    stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)

9    (per curiam).[2]

10        "A court required to rule upon the qualified immunity issue

11   must consider, then, this threshold question:  Taken in the light

12   most favorable to the party asserting the injury, do the facts

13   alleged show the office's conduct violated a constitutional right?

14   This must be the initial inquiry." <u>Saucier</u>, 121 S.Ct. at 2156

15   [citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)]   "If no

16   constitutional right would have been violated were the allegations

17   established, there is no necessity for further inquiries concerning

18   qualified immunity." <u>Id.</u>

19        "On the other hand, if a violation could be made out on a

20   favorable view of the parties' submissions, the next, sequential

21   step is to ask whether the right was clearly established.   This

22   inquiry, it is vital to note, must be undertaken in light of the

23   specific context of the case, not as a broad general proposition."

24   <u>Id.</u> Thus, "the right the official is alleged to have violated must

25

26   [2]        "[Q]uite aside from the special concerns regarding the need for
             early resolution of matters concerning immunity, litigants are
27           ordinarily entitled to resolution of their summary judgment motions
             through a determination whether there are material facts in dispute
28           regarding the elements necessary to establish liability." <u>Paine v.
             City of Lompoc</u>, 265 F.3d 975, 984 (9th Cir. 2001) (citation
             omitted).

1   have been 'clearly established' in a more particularized, and hence

2   more relevant, sense:  The contours of the right must be suffi-

3   ciently clear that a reasonable official would understand that what

4   he is doing violates that right." Id. (citing Anderson, 483 U.S. at

5   640).  "The relevant, dispositive inquiry in determining whether a

6   right is clearly established is whether it would be clear to a

7   reasonable officer that his conduct was unlawful in the situation he

8   confronted." Id. (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)

9   ["(A)s ... explained in Anderson, the right allegedly violated must

10  be defined at the appropriate level of specificity before a court

11  can determine if it was clearly established").  "If the law did not

12  put the officer on notice that his conduct would be clearly

13  unlawful, summary judgment based on qualified immunity is appropri-

14  ate." Id. at 2156-57 [citing Malley v. Briggs, 475 U.S. 335, 341

15  (1986) (qualified immunity protects "all but the plainly incompetent

16  or those who knowingly violate the law.")]

17       42 U.S.C. §1983 permits a person to maintain a cause of

18  action against a person acting under color of state law who violates

19  that person's constitutional rights.  An arrest triggering the

20  protection of the Fourth Amendment occurs when the arrest is

21  "without probable cause or other justification." Dubner v. City &

22  County of San Francisco 266 F.3d 959, 964 (9th Cir. 2001) A showing

23  of probable cause is a defense to a claim for false arrest. Arpin v.

24  Santa Clara Valley Trans. Agcy. 261 F.23d 912, 920 (9th Cir. 2001)

25       To state a claim of excessive force under §1983, Plaintiff

26  bears the burden of establishing that the defendant acting under

27  color of state law violated his rights under the Fourth Amendment by

28  using unreasonably excessive force during the arrest. Graham v.

1   <u>O'Connor</u> 490 U.S. 386, 396 (1989) Plaintiff's constitutional rights
2   are not violated if the amount of force used in the arrest is
3   "objectively reasonable."  That is, if the force used was necessary
4   "in light of the facts and circumstances confronting the police
5   officers," without regard to their intent of motivation. <u>Id.</u> at 397
6   Since the reasonableness test "is not capable of precise definition
7   or mechanical application," it must be applied carefully considering
8   "the facts and circumstances of each particular case," taking into
9   account several factors such as (1) the severity of the crime at
10   issue; (2) whether the suspect poses an immediate threat to the
11   safety of the officers or others; and (3) whether the suspect is
12   actively resisting arrest or attempting to evade arrest by flight.
13   <u>Id.</u> at 396

14          (a) <u>Defendants' Arrest of Plaintiff was Factually and</u>
15              <u>Objectively Reasonable</u>

16          Here, the evidence possessed by Defendants at the time of the
17   arrest support a finding that Defendants had probable cause to
18   arrest Plaintiff.  Plaintiff fit the description of the assailant at
19   Freese Elementary School that Defendants had been given.  Plaintiff
20   was contacted a short distance from the school.  He was observed
21   carrying a stick that fit the description of the weapon used to
22   attack Hernandez and threaten Pacheco.  Therefore, based on the
23   victims' descriptions, Plaintiff's possession of a stick and
24   Plaintiff's proximity to where the battery occurred at the time he
25   was contacted, it was objectively reasonable for Defendants to
26   detain Plaintiff.

27          After Defendants contacted Plaintiff, he refused to comply
28   with their orders to stand up and raise his arms.  Instead, he

1    became violent by trying to strike Johnson.  Plaintiff's violent

2    attempts to assault Johnson constituted Plaintiff's willful

3    resisting arrest and obstructing a police officer in the performance

4    of her duties.

5         Plaintiff does not dispute these facts, other than to allege

6    that the radio dispatches to the officers regarding the description

7    of the assailant were inaccurate, "were just stirring up trouble,"

8    [First Amended Complaint at 5(i)] and that the actions of Defendants

9    amounted to excessive force.  Plaintiff does not explain how the

10   radio dispatches were inaccurate, or how such inaccuracy affect his

11   claims.  Nor does Plaintiff present specific facts to conclude

12   anything other than that Defendants' arrest of him was objectively

13   reasonable.

14        (b) <u>Defendants' Use of Force Was Factually and Objectively</u>

15   <u>Reasonable</u>

16        In order to determine whether the force used to arrest was

17   reasonable under the circumstances, courts balance the "nature and

18   quality of the intrusion of the individual's Fourth Amendment

19   interests against the countervailing governmental interests at

20   stake." <u>Graham</u> 490 U.S. at 396.

21        In the context of qualified immunity and subsequent to

22   <u>Saucier</u>, <u>supra</u>, the Ninth Circuit found no violation of a constitu-

23   tional right and no excessive force used in the arrest of a

24   plaintiff who was sprayed with a chemical irritant, pushed to the

25   ground to handcuff her, roughly pulled up to her feet and placed in

26   a police car with the windows rolled up in 90 degree heat.  Even

27   though the plaintiff's finger was broken during her handcuffing, the

28   court found that the "nature and quality of the alleged intrusions

were minimal" under the circumstances of the arrest. <u>Jackson v. City of Bremerton</u> 268 F.3d 646, 652 (9th Cir. 2001) Since the court did not find a violation of a constitutional right, it did not proceed to the second step of the qualified immunity inquiry.

Here, after an analysis of the circumstances present at the time of Plaintiff's arrest and the factors stated in <u>Graham</u>, the Court concludes that Defendants were justified in using force on Plaintiff to arrest him. Plaintiff fit the description of a suspect who had allegedly hit and threatened with a stick two people at Freese Elementary School, and was found carrying a stick that matched the description of the stick used in the assaults. After Plaintiff was contacted by Defendants, he refused to comply with their orders and became violent. He posed an immediate threat to Defendants' safety by attempting to reach for the stick after one of the officers asked him to put his hands up, and then by attempting to strike the officers with his fists and feet as they were trying to take him into custody. By acting the way Plaintiff did, he actively resisted and tried to evade arrest. Therefore, all of the <u>Graham</u> factors were met. As a result, the force used on Plaintiff to arrest him was objectively reasonable.

Since the Court has found that Defendants' actions in arresting Plaintiff were objectively reasonable, there is no necessity for further inquiries regarding qualified immunity. <u>Saucier</u> 121 S.Ct. at 2156, <u>Jackson</u> 268 F.3d at 652, fn. 5. Defendants are entitled to qualified immunity and did not violate Plaintiff's constitutional rights. As a result, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

IV

1      When a court dismisses federal claims before trial, it should

2 dismiss ancillary state law claims as well. <u>United Mineworkers v.</u>

3 <u>Gibbs</u> 383 U.S. 715, 726 (1966).

4      Plaintiff filed this action in this Court on the basis of

5 allegations of violations of his civil rights under 42 U.S.C. §1983.

6 Since the Court has found that Defendants did not violate Plain-

7 tiff's constitutional rights and are entitled to qualified immunity,

8 the Court RECOMMENDS that the remaining state law claims for

9 battery, false arrest, negligence, emotional distress and violation

10 of Cal. Civ. Code §52.1 be DISMISSED.

11

12                             V

13                <u>CONCLUSION AND RECOMMENDATION</u>

14      The Court, having reviewed Plaintiff's First Amended

15 Complaint, Defendants' Motion for Summary Judgment and the declara-

16 tions filed in support thereof, and GOOD CAUSE APPEARING, HEREBY

17 RECOMMENDS that:

18 1. Defendants' Motion for Summary Judgment be GRANTED;

19 2. Plaintiff's remaining state law claims be DISMISSED.

20       This Report and Recommendation of the undersigned Magis-

21 trate Judge is submitted to the United States District Judge

22 assigned to this case, pursuant to the provision of 28 U.S.C. §

23 636(b)(1).

24      **IT IS ORDERED** that no later than <u>March 17, 2009</u>, any party to

25 this action may file written objections with the Court and serve a

26 copy on all parties.  The document should be captioned "Objections

27 to Report and Recommendation."

28      **IT IS FURTHER ORDERED** that any reply to the objections shall

        06CV2027

1  be filed with the Court and served on all parties no later than

2  April 17, 2009. The parties are advised that failure to file

3  objections within the specified time may waive the right to raise

4  those objections on appeal of the Court's order.  Martinez v. Ylst,

5  951 F.2d 1153 (9th Cir. 1991).

6

7

8

9

10

11  DATED:  February 17, 2009

12

13  _____

14  Hon. Leo S. Papas
    U.S. Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28